## HOME TRADING CO. v. HICKS et al.
### (No. 1032-4934.)

Commission of Appeals of Texas, Section A. Dec. 12, 1928.

Martin & Martin and Will Glover, all of Uvalde, for plaintiff in error.

Ditzler H. Jones and G. B. Fenley, both of Uvalde, for defendants in error.

NICKELS, J. Hicks filed suit against Judge and Home Trading Company. His averments were in the alternative.

The first group is: (a) Judge executed and delivered ("on or about" April 1, 1920) six promissory notes to R. J. Davenport, payable, respectively, one, two, three, four, five, and ten years after that date; Nos. 1, 2, and 3 being, each, for the principal sum of $500, 4 and 5 being, each, for the principal sum of $1,000, and No. 6 being for the principal sum of $10,000, with some credits indorsed (in 1921 and 1922) on Nos. 2 and 4. (b) "In due course of trade and for a valuable consideration" Hicks became the owner "and is now the owner" of Nos. 1, 2, 3, 4, and 5—now past due and unpaid. (c) He is "not the owner of" No. 6, but "the same was paid and satisfied, and is no longer in existence as a lien" on the land in question. (d) "Said notes were given in part payment" for land described, situated in Uvalde county, conveyed (April 1, 1920) by Davenport and wife to Judge by deed in which "a vendor's lien was expressly retained" (being "retained" also "in the said notes") which "was and is a valid and subsisting lien against the * * * property" and which he "is entitled to have * * * foreclosed." (e) Judge and wife (February 16, 1922) executed and delivered to Gossett (trustee for Federal Land Bank, Houston) "their deed of trust * * * for the sum of $8,000.00 with interest at the rate of six per centum per annum semi-annually, conditioned for the payment of the said sum and interest on the amortization plan, in sixty-six annual payments" and (inferably) their note in like amount, "said note being executed by Mortgagors in renewal and extension of $7,-600.00 of Note No. 6" (referred to above) "for the sum of $10,000.00 * * * and the balance for money advanced to pay for stock incidental to the loan." (f) In the deed of trust it is provided that "if any of the payments * * * be not made as the same become due * * * the Federal Land Bank of Houston, or its assigns, shall have and are given the right to sell the property * * * in satisfaction of such defaulted payment, and it is agreed that an assignee holding any installment or installments of the Note hereby secured shall have the same powers as are conferred on the Federal Land Bank of Houston." (g) The semiannual payments maturing April 1 and October 1, 1922 and 1923, were defaulted by Judge and, "in order to protect his second lien on the said land and to prevent the said land from being foreclosed on," Hicks "was compelled to pay the same, which he did on January 16, 1924, in the sum of $286.80; there were like defaults by Judge and like payments by Hicks April 1 and October 1, 1924 and 1925. (h) "Whereby" Hicks "became and was and is subrogated to the rights, liens and equities of the Fed-

eral Land Bank of Houston, as far as the said payments are concerned, and is entitled to have his lien foreclosed thereon for the aggregate of said amounts" with interest. (i) Home Trading Company is claiming and asserting a judgment lien in the principal sum of $1,438, in virtue of judgment of the district court of Uvalde county in its favor and against Judge rendered October 3, 1923, abstract of which was prepared and filed for record and recorded October 27, 1923. (j) No such lien exists, but, if it does, it is "inferior and subordinate to the liens" of Hicks, and the claimant "is made a party defendant hereto in order to determine the validity, status and place of the said lien, if any."

The second group is: (a) The conveyance of Davenport and wife to Judge (April 16, 1920) and execution of the six notes, with "vendor's lien" as in (a) above, except that the lien of note No. 6 was (in the deed) made "prior" and that of the others was made subordinate. (b) $7,600 "of the said note No. 6" (of the principal of $10,000) on February 16, 1922, was "transferred and assigned" to the Federal Land Bank of Houston by Davenport, "which was taken up by the said Federal Land Bank and carried forward as a first lien as evidenced" by the deed of trust executed by Judge and wife, mentioned in (e) above. (c) Davenport "retained and held the remainder of the said note" (i. e., No. 6) "with a balance due on the principal of $2,400.00," with interest. (d) The Federal Land Bank paid Davenport $7,600, "which was by him credited on the said $10,000.00 note." (e) Judge having defaulted "in the payment of the balance" on the said $10,000 note, Davenport filed suit in the district court of Uvalde county against Judge, and secured judgment (September 25, 1923) for the "balance" with foreclosure "of the said vendor's lien * * * as it existed on the 1st day of April, 1920; order of sale issued (October 24, 1923), which was "levied" October 25, 1923, and under which "sale" was had December 4, 1923; the wife of Davenport becoming purchaser upon a bid of $2,500 (less than the amount of the judgment), the proceeds of which were paid to Davenport. (f) Deed having been made to Mrs. Davenport, she (joined by Davenport) conveyed the land (January 15, 1924) to Hicks. (g) The "balance" of the judgment against Judge has never been paid. (h) Home Trading Company's judgment and abstracting thereof (October 27, 1923), mentioned in (i) of the first "group" above, happened at a time when Judge "had no interest or title in the said land"; hence the judgment lien never attached.

The prayer was for judgment: (a) Against Judge for "his debt"; (b) declaring his "liens * * * superior and prior to the judgment lien asserted" by Home Trading Company; (c) "cancelling * * * the judgment lien asserted" by Home Trading Company in event

his liens be not "declared superior" thereunto; (d) for "special and general relief."

Home Trading Company filed a pleading, called "First Amended Original Answer." Therein, "and for such amended answer" he first "pleads," inter alia, that the Davenport judgment was rendered "the 25th of September, 1923"; that order of sale issued thereon "on or about the 24th day of October, 1923," and that sale thereunder took place "the 24th day of December, 1923"; that the sale "exhausted the vendor's lien," etc., so that the (then) present suit ought to "abate and be dismissed," in so far as "the same seeks to foreclose said vendor's lien as to the several sums" unpaid on the indebtedness originally secured by the "vendor's lien" but not set up in the Davenport suit. On the "plea" issue was tendered and prayer was made that the suit be abated or dismissed to the extent mentioned.

"Without waiving * * * but still insisting upon" the foregoing "plea," etc., Home Trading Company (in the pleading mentioned) interposed a general demurrer, some special exceptions, and a general denial. Next a "special answer" was made in which, amongst other things, the Davenport judgment and sale thereunder was averred as working former adjudication against the original "vendor's lien," in so far as it was sought to be enforced in the (then) present suit, and also that Hicks' title rests in a warranty deed executed to him by the purchaser at the Davenport judgment sale (with joinder of her husband), in which Hicks' "title and possession were especially made subject" to Home Trading Company's judgment lien.

The "special answer" is followed by a paragraph in which it is alleged that "on the 3d day of October, 1923," Home Trading Company recovered a judgment against Judge, which became final, and remains unsatisfied in whole and part, and which was duly abstracted and registered in the county on October 27, 1923, so as to fix a lien, etc. Amongst the prayers is one to the effect that Home Trading Company's said judgment lien be foreclosed "as a valid and subsisting lien" with order of sale, etc.

Hicks, by supplemental petition, "demurred" to "all of the special answer as set out in the First Amended Original Answer of defendant, The Home Trading Company." The action of the court, which went beyond the "demurrer," is thus evidenced in the order:

"It is, therefore, the order and judgment of the court that the First Amended Original Answer and cross-action be struck out and held for naught, and in no manner to be considered by the court on the hearing of this cause, as a pleading before this court."

To that action Home Trading Company took and preserved its exception, and upon it predicates error in the trial court and in

294

the affirmance by the Court of Civil Appeals. 296 S. W. 627.

Error in striking the pleading (inclusive of a general denial), leaving the company in the suit without issue joined, is manifest, and the cause (as between Hicks and Home Trading Company) must be remanded.

As noted, Home Trading Company averred that Hicks' title and possession are, by terms of his deed, conditioned upon subjection to the asserted lien of its judgment (and abstracting) against Judge. Even if the "lien" never became enforceable against the will of adverse parties, reason preclusive of their liberty to recognize its existence and to base their contract on it does not appear. If in truth (despite the general denial of Hicks' title of the kind alleged by him and despite Home Trading Company's averment) title and possession was so conditioned, grounds avoiding the condition (even against Home Trading Company) do not conclusively appear. This is a matter for inquiry on the new trial.

In the "First Amended Original Answer," considered as a whole (the "plea" first mentioned by us being considered as one in bar and to the merits), it appears that the Davenport judgment was rendered September 5, 1923, and that Home Trading Company's lien (a statutory one) came into existence, if at all, October 27, 1923. If that be true (and, if the pleading stays as it is, it will be taken as true on the new trial), Home Trading Company, in that event, occupies the position of an incumbrancer (or purchaser) pendente lite, and, in respect to the land involved here, whatever rights (inchoate or otherwise) it acquired through attempt to fix its statutory lien were foreclosed and ended by the sale made pursuant to the Davenport judgment. McDonald v. Miller, 90 Tex. 309, 311, 39 S. W. 89. Otherwise Home Trading Company must be assigned the position and rights of a junior incumbrancer. Id.: Davis v. Walker, (Tex. Civ. App.) 233 S. W. 521. This, it must be admitted, is in conflict with a ruling in Reyes v. Kingman Texas Implement Co. (Tex. Civ. App.) 188 S. W. 450, but is a consequence of McDonald v. Miller, as we read the discussion on pages 311 and 313 of 90 Tex. (39 S. W. 89). The holdings in Reyes v. Kingman Implement Co. were not reviewed by the Supreme Court.

If, in consonance with what has been said, Home Trading Company's claim of lien was not ended by sale under the Davenport judgment, destruction of the lien is not inevitably worked by Hicks' payments of the accrued installments due the Federal Land Bank. Hicks had acquired the title January 15th. His pleading in respect to those payments as basis for claim of subrogation to the prior rights of Federal Land Bank is most general and indefinite. The facts may be either that he was a volunteer (or assumed

payment of the debt), so that subrogation did not result, or that conventional subrogation (Fievel v. Zuber, 67 Tex. 275, 3 S. W. 273; 37 Cyc. 374–381) happened. In the latter event, Home Trading Company's lien would be second to that of the Federal Land Bank (by substitution, of Hicks) in respect to the installments paid.

These matters have not been discussed in an effort to determine what, in realty, are the rights of the parties—that had best be left to view of the facts to be developed upon the trial and the state of pleading at that time— but for the purpose merely of illustrating error in the holding that Home Trading Company (beside its general denial, etc.) did not present justiciable defensive and affirmative matter.

We recommend that the judgments of the district court and Court of Civil Appeals be reversed, and that the cause be remanded.

GREENWOOD and PIERSON, JJ. Judgments of the district court and Court of Civil Appeals in all respects reversed, and cause remanded to the district court.

We approved the holding of the Commission of Appeals on the questions discussed in its opinion.